## Teitelbaum Matter

*Hubert I. Teitelbaum,* p. p.

*Robert W. Duggan,* District Attorney for Allegheny County.

FIOK, J., July 25, 1967.—The question posed in this proceeding is the propriety of representation by Hubert I. Teitelbaum, Esq., a member of the bar of Allegheny County, of Lawrence J. Maloney, who stands charged with violations of the criminal laws of the Commonwealth of Pennsylvania in Allegheny County. In order to understand the nature of the proceedings and the implication of the question involved, it is necessary to recite factual information leading to the present proceeding.

During the years 1958 and 1959, Hubert I. Teitelbaum, as United States Attorney for the Western District of Pennsylvania, conducted a Federal grand jury investigation of certain high-ranking officers of the Pittsburgh Police Force with a view of ascertaining whether they received, or were receiving, "pay-offs"

from the rackets element. A failure to report such income, if any, was, and is, a violation of the Federal income tax laws.

While the names of the police officers investigated were not revealed, known racket figures and others were questioned by Mr. Teitelbaum and members of his staff. Sometime in 1959, Mr. Teitelbaum concluded that there was insufficient credible evidence to proceed and the investigation was terminated.

In June of 1961, Mr. Teitelbaum left the position of United States Attorney and returned to the private practice of law. Even prior to that, he was inactive for a period of three months as a result of an injury he received.

In 1965, Lawrence J. Maloney, a former police officer of the City of Pittsburgh, was tried and acquitted for income tax violation by the United States District Court for the Western District of Pennsylvania. The substance of this charge was that Mr. Maloney received "pay-offs" from the rackets element and that he failed to report and pay Federal income taxes on such alleged "pay-offs".

In 1966, Clarence C. Cooper, another former city police officer, pleaded guilty in the United States District Court for the Western District of Pennsylvania to income tax violations, and he testified that he had received money from certain racketeers, whom he named. He further testified that he had shared the money he received with various members of the Pittsburgh police force. The United States Attorney, who was in charge of not only this prosecution, but also the Maloney prosecution, offered and did make public to proper city and county officials all the information he had gathered. Among the county officials, the District Attorney of Allegheny County was included.

Based upon the information obtained from the United States Attorney, the testimony of Clarence C.

Cooper and his own investigation, the District Attorney of Allegheny County caused to be filed a criminal complaint in April of 1967, charging Mr. Maloney with (a) receiving a $500 bribe, through Clarence C. Cooper, from numbers writers on April 20, 1965, (b) extortion from April 20, 1961, to and including April 20, 1965, and (c) conspiring with other police officers to extort "protection money" from numbers writers beginning in 1952 and extending to May of 1965. The complaint made no mention of anyone who allegedly conspired with Mr. Maloney until sometime in 1961.

Mr. Teitelbaum was engaged to represent Maloney at the preliminary hearing and is presently engaged in his representation. Immediately upon the termination of the preliminary hearing, a petition for writ of habeas corpus was presented to the court, alleging that Maloney was unlawfully restrained of his liberty and demanding that a rule be issued upon the District Attorney of Allegheny County to show cause why a writ of habeas corpus should not issue. This rule was returnable to April 26, 1967, at 2 p. m.

Although the district attorney knew that Mr. Teitelbaum represented Maloney not only at the preliminary hearing but also in the presentation of the petition for a writ of habeas corpus, nothing was presented to the court until the afternoon of April 26, 1967. At that time, the district attorney informed the court verbally that he had information which, as a matter of professional ethics, prevented Mr. Teitelbaum from further legal representation of Maloney. A reference was made to the time Mr. Teitelbaum conducted an investigation as United States Attorney, referred to hereinabove. In view of this accusation of improper conduct, the scheduled hearing on the rule to show cause was continued until this matter, in the interest of all parties and of justice, could be aired and until the question of the propriety of continued legal repre-

sentation could be resolved.

The question is, therefore, whether any of the canons of professional ethics preclude Mr. Teitelbaum from defending Maloney in a criminal proceeding in 1967, because of alleged confidential information he might have had access to in 1958-59. To put it another way, is a former United States attorney, who conducted a Federal investigation into racket "pay-offs" in 1958-59, which failed to produce any charges or indictments, precluded from representing a former police officer in a State prosecution, charging him with crime alleged to have been committed in 1965 and at diverse other dates prior thereto? [1]

Two canons of professional ethics are involved, Canon 6 and Canon 36 of the American Bar Association. Canon 6, in part, provides:

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed".

Canon 36, in part, provides:

"A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ".

Canon 6 may be eliminated from consideration quickly. In 1958-59, Mr. Teitelbaum was employed by the Federal government. His present representation is in a State proceeding and can in no way involve any breach of confidence of his former employer.

---

[1] While certain acts are claimed to have occurred as far back as 1952, the statute of limitations precludes any prosecution therefor. Nevertheless, such prior act, if done in pursuance of the conspiracy, may be used as evidence of a continuing conspiracy.

Neither can the acceptance of legal defense in a State prosecution subsequent to the termination of his employment be construed as a disclosure of any secret which could adversely affect any interest of the Federal government. The office of United States attorney and that of defense counsel are so dissimilar that no disposition of the 1967 indictment, in a legal sense, could possibly affect any interest of the United States. The United States cannot prosecute the charges laid in the present indictment and the United States attorney has turned over whatever information he had to the State authorities for possible action. The district attorney concedes that such representation by Mr. Teitelbaum would not constitute a violation of canon 6.

Canon 36, however, requires closer scrutiny. While the canon is clear, its application to the facts here involved requires careful consideration. The line of demarcation between what an attorney may or may not do, having once held public office and having resigned from such office, cannot be determined summarily or dogmatically.

The district attorney concedes that Maloney is charged with overt acts allegedly committed after Mr. Teitelbaum left the office of United States attorney. The indictment approved by the grand jury clearly discloses this to be a fact. However, it is urged that the evidence will establish that the alleged conspiracy among police officers existed as early as 1952 and continued through the years 1958 and 1959 when Mr. Teitelbaum was conducting an investigation of the Pittsburgh police and, therefore, he should be disqualified from representing Maloney. The pertinent provision of canon 36 precludes representation in any matter investigated or passed upon while in such office.

Did Mr. Teitelbaum investigate racket "pay-offs" in 1958 and 1959? Obviously, he did. That was the

purpose of the probe. Did he pass on Maloney's connection therewith in 1958-59? Specifically, Maloney was not the subject of the investigation, and in this limited sense, at least, his connection with the racket "pay-offs" was not passed upon. No charges were brought and no indictments were drawn. Moreover, it is common knowledge that a separate investigation was again conducted, directed at Maloney and others, by the present United States attorney and that Maloney was tried and acquitted on the charges against him brought as a result of such investigation. This took place long after Mr. Teitelbaum left his office.

The present indictment against Maloney does not include the charge of conspiracy to extort. Had such a formal charge been brought, there might be some basis for the conclusion that Mr. Teitelbaum should not represent Maloney. Such a charge absent, there is little reason to consider evidence which might support such charge. It is common knowledge that Maloney has been out of service as a police officer for more than two years. An indictment for conspiracy to extort may not now be brought against him, since he left the service for a period of more than two years. See Act of March 31, 1860, P. L. 427, as amended, 19 PS §211. See also Commonwealth v. Neff, 407 Pa. 1, 179 A. 2d 630 (1962). It is highly questionable, therefore, that Mr. Teitelbaum will ever represent Maloney on such a charge.

The language of canon 36 does not restrict its application to time. It includes any matter at any time, but any reasonable interpretation must connect the restriction to matters of relevancy, materiality and causal relationship. Thus, for example, under a strict interpretation, it would appear that had Maloney remained on the police force until 1971, and thereafter an indictment had been returned against him in 1973,

on charges of racket "pay-offs" whose misty origin dated back to 1952, it could be argued that Mr. Teitelbaum had "passed upon or investigated" racket "pay-offs" in 1958-59 and was, therefore, precluded from defending Maloney. Such an interpretation is not reasonable. The cardinal test of any regulation requires that it be reasonable. A reasonable interpretation of canon 36 should not include matters which the statute of limitations precludes from legal redress.

There are strong policy considerations supporting this broad or reasonable interpretation of canon 36. A strict interpretation of the canon would necessarily disqualify a large percentage of former government attorneys who are now engaged in private practice of law not only in civil but criminal matters. This problem has been aptly pointed out in United States v. Standard Oil Company, 136 F. Supp. 345 (S. D. N. Y., 1955). It was there held that a former government attorney could maintain litigation against the same government agency by which he was formerly employed without violating any of the canons of ethics. If such a strict interpretation were put to the thousands of lawyers engaged in government activities, we wonder how many of them would engage in such fields, for example, as antitrust litigation, labor law, general corporation practice, public utility work and security exchange work. Most such attorneys accept such positions with the government to further their legal education and to become specialists in these fields, only to learn later that a strict interpretation of canon 36 prevents them from following such fields of endeavor.

Our attention has been directed to three opinions of the American Bar Association dealing with this problem. However, none of them meets the factual situation involved in the instant proceedings. ABA Opinion No. 134 concluded that a member of a State

attorney's office, upon retirement, could not properly represent a defendant whose case originated in the State attorney's office before the member retired. ABA Opinion No. 135 concluded that a State prosecuting attorney, who investigated an automobile accident to determine if the law had been violated, could not properly represent one of the parties to the accident in a civil suit arising out of the accident. ABA Opinion No. 26 concluded that the canon was intended to forbid a lawyer accepting private legal employment in any matter *involving the same facts* as were *involved in any specific question* which he had investigated while in public office or public employment.

The only recorded purpose of canon 36 is to "avoid the appearance of evil" that is, if a retired public officer undertakes a matter which he had previously investigated or passed upon, he is open to suspicion that his public decision was influenced by the hope of later being privately employed: ABA Opinion No. 26; Drinker, Legal Ethics, p. 131; United States v. Standard Oil Company, supra. Construing canon 36 in the light of its purpose in the instant case, we can find no justification to conclude that any decision made by Mr. Teitelbaum in 1958 or 1959 could in any way have been influenced by the hope for private employment in a matter occurring some eight years later.

Suspicion should never be permitted to convict an accused in our courts charged with crime. Neither should a member of the bar of this court be accused of unethical conduct by suspicion. An attorney throughout the years constantly builds his reputation not only for ability, but also for that decorum which is the hallmark of character. This should not be attempted to be destroyed except for valid reason based on fact.

We conclude with the observation that nothing has been shown to indicate improper or unethical conduct on the part of Mr. Teitelbaum in representing Ma-

loney. He may continue to represent Maloney in the matters before the criminal courts of Allegheny County. Our experience has demonstrated that he is an attorney of high integrity and enjoys a well-earned reputation for being a respected and conscientious member of our bar. It is unfortunate that his character and reputation have been placed under suspicion, washed, dried, and ironed in the public press. Those responsible should be condemned for their actions.

A suitable order will be entered placing the habeas corpus matter, which was continued pending a determination of the issues herein raised, back on the agenda.